Original



CLERK'S OFFICE
A TRUE COPY
Dec 18, 2020
s/ Jeremy Heacox
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| Information related to the Sprint cellular telephone assigned call number (414) 349-6407, MSID 000004144679717 (the "Target Cell Phone") | ) ) ) ) |

Case No. **20-M-494 (SCD)**

Matter No.: 2020R00325

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

     An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

     See Attachment A. This Court has jurisdiction pursuant to 18 U.S.C. §§2703 and 2711 and Fderal Rule of Criminal Procedure 41;

     I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

     See Attachment B.

     **YOU ARE COMMANDED** to execute this warrant on or before    1-1-21    _____ *(not to exceed 14 days)*
    ❐ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

     Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

     The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to   Hon. Stephen C. Dries  .
                                                    *(United States Magistrate Judge)*

     ☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
     ☑ for  _30_  days *(not to exceed 30)*    ❐ until, the facts justifying, the later specific date of _____ .

Date and time issued:    12-18-20 1:35 pm    _____      *Stephen C. Dries* (signature)
                                                         *Judge's signature*

City and state:    *Milwaukee, Wis*    _____      Stephen C. Dries, U.S. Magistrate
                                                         *Printed name and title*

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

## Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

# ATTACHMENT A

## Property to Be Searched

1. Records and information associated with the cellular device assigned call number (414) 349-6407**,** with International Mobile Subscriber Identity MSID-000004144679717 (the "Target Cell Phone"), whose listed subscriber(s) is unknown, that is in the custody or control of Sprint (referred to herein and in Attachment B as the "Provider"), a wireless communications service provider that is headquartered at 6602 Sprint Parkway Suite 1, Overland Park, Kansas 66251.

2. The Target Cell Phone.

<u>**ATTACHMENT B**</u>

**Particular Things to be Seized**

**I.        Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a. The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phone for the time period July 1, 2020 to present:

  i. Names (including subscriber names, user names, and screen names);

  ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

  iii. Local and long distance telephone connection records;

  iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

  v. Length of service (including start date) and types of service utilized;

  vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

  vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

  viii. Means and source of payment for such service (including any credit card or bank account number) and billing records**.**

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received).

b. Information associated with each communication to and from the Target Cell Phone for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the Target Cell Phone.

c. Information about the location of the Target Cell Phone for a period of 30 days during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by

the government. The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

ii. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

**II.**     **Information to be Seized by the Government**

All information described above in Section I that constitutes evidence of violations of 21 U.S.C. §§ 841(a) and 846 involving SERGIO ROMO and the ROMO DTO during the period July 1, 2020 to present.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin



CLERK'S OFFICE
A TRUE COPY
Dec 18, 2020
s/ Jeremy Heacox
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

Information related to the Sprint cellular telephone assigned call number (414) 349-6407, MSID 000004144679717 (the "Target Cell Phone")

)
)
)
)
)
)

Case No. **20-M-494 (SCD)**

Matter No.: 2020R00325

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A. This Court has jurisdiction pursuant to 18 U.S.C. §§2703 and 2711 and Fderal Rule of Criminal Procedure 41;

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §841(a) | Manufacture, distribute or dispense, or possess with intent to manufacture, distribute or dispense a controlled substance; |

The application is based on these facts:

See Affidavit attached.

☑ Continued on the attached sheet.

☑ Delayed notice of __30__ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_Nicholas Gates_
*Applicant's signature*

DCI SA Nicholas L. Gates
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

Telephone _____ *(specify reliable electronic means).*

Date: __12-18-20__

*Judge's signature*

City and state: _Milwaukee, Wis_

Hon. Stephen C. Dries, U.S. Magistrate
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Nicholas L. Gates being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **(414) 349-6407,** with International Mobile Subscriber Identity MSID-000004144679717 (the "Target Cell Phone"), whose service provider is Sprint ("Service Provider"), a wireless telephone service provider headquartered at 6602 Sprint Parkway Suite 1, Overland Park, KS 66251. The Target Cell Phone is described herein and in Attachment A, and the location information and other records to be seized is described herein and in Attachment B.

2.       Because this warrant application seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), this affidavit includes references to an existing court-authorized "pen-trap device" for said Target Cell Phone.

3.      I am Special Agent Nicholas Gates with the Wisconsin Department of Justice-Division of Criminal Investigation and have been since September 18th, 2017**.** I am currently assigned to the South Eastern Wisconsin Regional Gang Task Force (SWRGTF) and the Milwaukee Federal Bureau of Investigations Field Office.  In June 2020, I was officially sworn in as a federal task force officer to work with the FBI's gang task force, which provides me with the authorization to present sworn affidavits in support of federal search warrants applications.  Prior

to my law enforcement service in Wisconsin, I was a certified police officer in North Dakota for approximately 13 years.

4.      I have received training in the area of controlled substances investigations, money laundering, financial investigations, and various methods that drug dealers use in an effort to conceal and launder the proceeds of their illicit drug trafficking enterprises. I have participated in numerous investigations involving violations of controlled substances laws. I have participated or assisted in search warrants for narcotic related offenses that have resulted in the seizure of United States currency and vehicles, from individuals involved in narcotics trafficking.

5.      In connection with my official DCI and SWRGTF duties, I investigate violations of Title 21, United States Code, Sections 841(a) and 846, which are violations of the Federal Controlled Substances Act. I have training and experience in electronic surveillance methods, the debriefing of defendants, informants, and witnesses, as well as others who have knowledge of the distribution, transportation, storage and importation of controlled substances. Further, I have participated in the execution of federal search warrants.

6.      Based upon my training and experience, I know that a "controlled buy" (and/or controlled contact) is a law enforcement operation in which an informant purchases drugs from a target. The operation is conducted using surveillance, usually audio and video taping equipment, and pre-recorded purchase money. When an informant is used, he/she is searched for contraband, weapons, and money before the operation. The informant is also wired with a concealed body recorder and monitoring device. When the transaction is completed, the informant meets case agents at a pre-determined meet location and gives the purchased drugs and the recording/monitoring equipment to the case agents. The informant is again searched for

contraband, weapons, and money. Additionally, all telephone calls made by the informant while under the direction and control of case agents are recorded.

7. I have participated in investigations that have led to the issuance of numerous search warrants involving violations of narcotics laws. These warrants involved the search of locations including: residences of targets, their associates and relatives, "stash houses" (houses used as drug/money storage locations), storage facilities, cellular/camera phones, and computers. Evidence searched for and recovered in these locations has included controlled substances, records pertaining to the expenditures and profits realized therefrom, monetary instruments, and various assets that were purchased with the proceeds of the drug trafficking.

8. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

9. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 841(a) and 846 have been committed by SERGIO ROMO (AKA: "Junior"). There is also probable cause to believe that the location information and other records and information described in Attachment B will constitute evidence of these criminal violations.

10. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

**PROBABLE CAUSE**

11.     The United States, including Wisconsin Department of Justice-Division of Criminal Investigation, is conducting a criminal investigation of SERGIO ROMO, ROBERT ROMO, JUAN ROMO and the ROMO drug trafficking organization (DTO) regarding possible violations of 21 U.S.C. §§ 841(a) and 846.

12.     The investigation to date has included traditional law enforcement methods, including, but not limited to: interviews with confidential sources and sources of information; information from other law enforcement officers; documentary evidence; pen register, trap and trace, and telephone toll data; controlled buys of drugs, controlled meetings with targets, recorded telephone calls with targets, and controlled payments of money; physical surveillance.

13.     On July 30, 2020 a Confidential Human Source (CHS1) approached the Federal Bureau of Investigation (FBI) to provide information on drug activity occurring within the City of Milwaukee, Wisconsin.  On July 30, 2020, FBI Special Agents Nicholas Rupnick (S/A Rupnick) and Jennifer Peterson (S/A Peterson) met in person with CHS1.

14.     CHS1 provided information on the ROMO family, specifically SERGIO ROMO (AKA: "Junior"), ROBERT ROMO (AKA: "Little Big Brother" and "Beto"), and JUAN ROMO (AKA:  "Caritas").  According to CHS1, the ROMO family has been a long-term source of supply for cocaine distribution within the City of Milwaukee, Wisconsin and the ROMO family was affiliated with a violent street gang known as the "Mexican Posse."

15.     CHS1 has known the ROMO family for two (2) years.  S/A Rupnick and S/A Peterson provided the CHS1 with images related to the ROMO family members.  CHS1 positively identified SERGIO ROMO, ROBERT ROMO, and JUAN ROMO from the provided

images.  Additionally, CHS1 identified phone numbers and residences associated with members of the ROMO family.

16.     CHS1 stated SERGIO ROMO uses the following cell phone number: 414-349-6407 ("Target Cell Phone" or "TCP1").  SERGIO ROMO's phone number was provided to CHS1 from personal contact with ROBERT and/or SERGIO ROMO.

17.     CHS1 stated ROBERT ROMO uses the following cell phone number: 414-400-3182.  ROBERT ROMO's phone numbers was provided to CHS1 from personal contact with ROBERT and/or SERGIO ROMO.

18.     CHS1 agreed to provide additional information to case agents and conduct controlled purchases of narcotics from the ROMO family and/or their associates in exchange for monetary compensation.  S/A Rupnick and S/A Peterson conducted a background and criminal history check on CHS1 and found no previous convictions or pending criminal charges.

19.     The information provided by the CHS1 has been corroborated through sources regularly available to law enforcement. Agents have also verified the information through phone toll analysis, physical surveillance, and controlled buys.

20.     On September 2, 2020, SERGIO ROMO contacted CHS1 via Facebook Messenger regarding the sale of two (2) "eight balls" of cocaine (approximately .25 ounces or 7 grams total). The deal was not completed on September 2nd, 2020. This contact was made by SERGIO ROMO via the following Facebook account: "**facebook.com/junior.sur.144**."

21.     While in the presence of case agents, CHS1 displayed SERGIO ROMO's Facebook account on CHS1's personal cell phone.  Agents verified the account ID and observed images of SERGIO ROMO on the account.

22.     During a meeting on September 3, 2020 between CHS1 and SERGIO ROMO, SERGIO ROMO told CHS1 that if he/she wanted to purchase cocaine, he/she would have to contact ROBERT ROMO via Facebook Messenger.  CHS1 used his/her cell phone to open Facebook.  CHS1 located the account "**facebook.com/robert.romo7**" and displayed the account to SERGIO ROMO. SERGIO ROMO confirmed the displayed account was his brother, ROBERT ROMO.   CHS1 met with agents and displayed the account, "**facebook.com/robert.romo7**." Agents observed images of ROBERT ROMO within the Facebook account.

23.     Case agents sought to introduce an undercover agent to the ROMO drug trafficking organization (DTO) through the CS1's various ROMO DTO contacts.  Agents were able to make an introduction in September 2020.

24.     On September 28, 2020, United States Magistrate Judge Stephen C. Dries issued an "[o]rder authorizing the installation and use of a pen register and trap and trace device or process ('pen-trap device')" on SERGIO ROMO's cell phone: 414-397-6407 (App. No. 13823).  After serving said order on Sprint, case agents received call data pertaining to SERGIO ROMO's phone: 414-397-6407 (Target Cell Phone or TCP1).  Said "pen-trap device" is currently providing call data to case agents.

25.     On October 26, 2020, at approximately 2:30 p.m., while working in an undercover capacity, City of Milwaukee Police Officer Arzaga, who is assigned to the North Central High Intensity Drug Trafficking Area (HIDTA), contacted SERGIO ROMO at TCP1.  Officer Arzaga inquired about purchasing six (6) ounces of cocaine from SERGIO ROMO.  SERGIO ROMO stated he needed to call the "warehouse" to know what was available.  SERGIO ROMO stated he would call back within 5 minutes.

26. On October 26, 2020, at approximately 2:32 p.m., SERGIO ROMO placed a call from TCP1 to ROBERT ROMO at 414-400-3182.

27. On October 26, 2020, at approximately 2:33 p.m., SERGIO ROMO placed a call from TCP1 to Officer Arzaga and stated the cocaine was not available. SERGIO ROMO further stated he would call Officer Arzaga when the cocaine is available.

28. On October 27, 2020, SERGIO ROMO utilized TCP1 and contacted Officer Arzaga. SERGIO ROMO informed Officer Arzaga that the cocaine was available. SERGIO ROMO further stated the cocaine was delivered from Chicago to Milwaukee.

29. Through the use of cell phone text message(s) and phone call(s) to and from TCP1, an undercover controlled buy was arranged for October 28, 2020.

30. On October 28, 2020, Officer Arzaga met with SERGIO ROMO at 1035 South 33rd Street, Milwaukee, Wisconsin to purchase six (6) ounces of cocaine for $12,000.00. Officer Arzaga gave SERGIO ROMO $12,000 in pre-recorded government buy money. In exchange, SERGIO ROMO gave Officer Arzaga six (6) ounces of cocaine to complete the transaction. The undercover controlled buy was audio and visually recorded with supporting agents in the area conducting surveillance.

31. In my training and experience, I have learned that the Service Provider is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to

which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

## Cell-Site Data

32.     Based on my training and experience, I know that the Service Provider can collect cell-site data on a prospective basis about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## E-911 Phase II / GPS Location Data

33.     I know that some providers of cellular telephone service have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. As discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces

of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data. Based on my training and experience, I know that the Service Provider can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available.

## Subscriber Information

34. Based on my training and experience, I know that wireless providers such as the Service Provider typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as the Service Provider typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the Target Cell Phone's user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

35. Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

36.     I further request that the Court direct the Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

37.     I also request that the Court direct the Service Provider to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

38.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510)

or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

39.     I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

## ATTACHMENT A

### Property to Be Searched

1. Records and information associated with the cellular device assigned call number (414) 349-6407, with International Mobile Subscriber Identity MSID-000004144679717 (the "Target Cell Phone"), whose listed subscriber(s) is unknown, that is in the custody or control of Sprint (referred to herein and in Attachment B as the "Provider"), a wireless communications service provider that is headquartered at 6602 Sprint Parkway Suite 1, Overland Park, Kansas 66251.

2. The Target Cell Phone.

**ATTACHMENT B**

**Particular Things to be Seized**

**I.      Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a. The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phone for the time period July 1, 2020 to present:

  i. Names (including subscriber names, user names, and screen names);

  ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

  iii. Local and long distance telephone connection records;

  iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

  v. Length of service (including start date) and types of service utilized;

  vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

  vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

  viii. Means and source of payment for such service (including any credit card or bank account number) and billing records**.**

2

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received).

b. Information associated with each communication to and from the Target Cell Phone for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the Target Cell Phone.

c. Information about the location of the Target Cell Phone for a period of 30 days during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by

the government. The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

ii. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.    Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of 21 U.S.C. §§ 841(a) and 846 involving SERGIO ROMO and the ROMO DTO during the period July 1, 2020 to present.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC
## RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE
## 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws

of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in

this certification is true and correct. I am employed by XXXX ,and my title is

_____. I am qualified to authenticate the records attached hereto

because I am familiar with how the records were created, managed, stored, and retrieved. I state

that the records attached hereto are true duplicates of the original records in the custody of

XXXX The attached records consist of _____ **[GENERALLY DESCRIBE**

**RECORDS (pages/CDs/megabytes)].** I further state that:

a.     all records attached to this certificate were made at or near the time of the

occurrence of the matter set forth by, or from information transmitted by, a person with

knowledge of those matters, they were kept in the ordinary course of the regularly conducted

business activity of _____ and they were made by _____ as a regular

practice; and

b.     such records were generated by _____ electronic process or system

that produces an accurate result, to wit:

1.     the records were copied from electronic device(s), storage medium(s), or

file(s) in the custody of _____ in a manner to ensure that they are true

duplicates of the original records; and

2. the process or system is regularly verified by _____, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____  _____
Date             Signature